UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-17-CR-737 |
| | § | |
| KAAN SERCAN DAMLARKAYA | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for

the Southern District of Texas, and undersigned Assistant United States Attorneys, the defendant,

Kaan Sercan Damlarkaya, and defendant's counsel, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B)

of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the

terms and conditions of which are as follows:

### Defendant's Agreement

1.  Defendant agrees to plead guilty to Count Two of the Indictment.   Count Two charges

Defendant with **Attempting To Provide Material Support to a Designated Foreign Terrorist**

**Organization, in violation of Title 18, United States Code, Section 2339B**.   Defendant also

agrees and stipulates that Section 3A1.4 of the United States Sentencing Guidelines (hereafter "the

Guidelines") applies in this case, and further agrees and stipulates not to object to or otherwise

oppose the offense level and criminal history category that the application of Section 3A1.4 of the

Guidelines imposes on him.   Defendant, by entering this plea, agrees that he is waiving any right

to have the facts that the law makes essential to the punishment proven to a jury or judge beyond

a reasonable doubt.

**Punishment Range**

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2339B, is imprisonment of up to twenty (20) years and a fine of up to $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to life. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(j).  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two (2) years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3).  Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3.  Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.  Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.  Defendant's attorney

2

has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Waiver of Appeal and Collateral Review

5.  Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.  Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s).  In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and

3

is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8.   The United States agrees to each of the following:

(a)      If Defendant pleads guilty to Count Two of the Indictment and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Indictment as to Defendant at the time of sentencing;

(b)      If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of Section 3E1.1(a) is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction in the Defendant's offense level because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

9.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.   This plea agreement binds only the United States

4

Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the U.S. Probation Office in connection with that office's preparation of a presentence investigation report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the U.S. Probation Office;

(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

11.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and

5

that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

12.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)      If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)      At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

13.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count Two of the Indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others, would be offered to establish Defendant's guilt and are agreed to by the Defendant and the United States:

a.      From August 2017 until his arrest in December 2017, the Defendant

6

attempted to join and support a designated foreign terrorist organization ("FTO") known as the Islamic State in Iraq and al-Sham ("ISIS").   During this time period, the Defendant also stated that if he was unsuccessful in joining ISIS overseas, he planned to conduct a terrorist attack in support of ISIS within the United States.   In addition to wanting to join ISIS, during this time period the defendant also provided information to ISIS supporters about the use of machetes, the homemade construction of an automatic weapon, and, on at least two occasions, how to build explosives and how to use explosive materials.

b.      As part of his plans to join ISIS overseas, in approximately early August 2017 the defendant had numerous conversations online with a person he believed to be a fellow ISIS supporter but who was actually a confidential source for the Federal Bureau of Investigation (FBI)(hereafter "Source #1").   During these conversation the defendant told Source #1 about his intention to travel overseas to fight for ISIS and, alternatively, to commit an attack in the United States if he could not join ISIS.   He made it clear to Source #1 that it was his desire to join ISIS, and that he wanted to either go to Syria or Afghanistan to fight for ISIS.   The defendant also sought assistance from Source #1 in traveling to join ISIS and told Source #1 he had previously contacted other individuals to try and get help to travel overseas to support ISIS.   He told Source #1 details about having tried and failed to get to Syria to join ISIS in 2014 and 2015.

c.      The Defendant also told Source #1 that if he was unsuccessful in joining ISIS overseas, he would conduct an on attack non-muslims in the United States, and that it

was his "dream" to be a martyr.

       d.     On or about November 4, 2017, the Defendant had a conversation online with a person he believed to be a fellow ISIS supporter but who was actually an FBI employee acting in an undercover capacity ("UCE #1") about going overseas to join ISIS. He also told UCE #1 that he believed he could start making plans to travel to Syria via Turkey with the purpose of joining and supporting ISIS and becoming a martyr. Defendant is a United States citizen of Turkish origin, and he told UCE #1 that traveling to Turkey to get to Syria was less risky for him if he got stopped there by law enforcement because of his Turkish ethnicity and family members who still lived there.

       e.     On or about November 15, 2017, the Defendant had a conversation online with a person he believed to be a fellow ISIS supporter but who was actually another FBI employee acting in an undercover capacity ("UCE #2").   In this conversation the Defendant also told UCE #2 that he had tried on multiple previous occasions to go to Syria to join ISIS, consistent with statements he made to Source #1 as detailed above.   The Defendant also told UCE #2 that he was in love with a friend's sister, but said that because of his plans to join and support ISIS, the girl's parents prohibited her from any contact with him because "of course they won't let their daughter marry a terrorist."

       f.     The Defendant also told UCE #2 he was waiting on a Syria-based ISIS "smuggler" to return from a training camp, but that if UCE #2 wanted to join ISIS, UCE

#2 should consider joining ISIS in "khurasan," which was a reference to ISIS's presence in the Afghanistan/Pakistan region.   The Defendant also told UCE #2 that he would help UCE #2 as much as he could in getting to, joining and supporting ISIS.

g.     A few days later the Defendant told UCE #2 his detailed plans on how he was going to join ISIS, and gave UCE #2 advice on how to get to ISIS, including what cover story to provide authorities if he was stopped on his travels there.   After UCE #2 explained that he/she tried to contact an Afghanistan-based ISIS facilitator whom the Defendant has referred him/her to, UCE #2 asked the Defendant whether he had a "backup" plan to get to ISIS in Syria.   The Defendant stated he had a backup plan, and that it involved a ruse which involved gaining the trust of a facilitator for a Syria-based terrorist group not affiliated with ISIS, known as Hayat Tahrir al-Sham ("HTS").   Hayat Tahrir al-Sham (HTS) is another group fighting in Syria and is not affiliated with ISIS.   According to the Defendant, his back-up plan was to travel to Syria to join HTS, but that once there he would abandon HTS and join ISIS instead.   The Defendant also told UCE #2 that he did not care if he lived or died as long as he died a martyr.

h.     The Defendant also told UCE # 2 that he was in love with the sister of someone he intended to take to join ISIS with him.   On or about October 25, 2017, the Defendant sent himself an email which contained a letter he intended to send to his love interest if he made it to Syria successfully.   In the letter the Defendant wrote since he was "not in america any more," he was "free" to tell her the "truth."   He wrote that he

9

"escaped" from the "oppressive place" and further stated, "now I am in sham (you may know it as syria) And I'm on my way to pledge allegiance to the Islamic State."   The Defendant further wrote, "my brothers in the Islamic State have been helping me to make hijrah (to migrate) to sham (you know it as syria) and now I am in the best place on earth in sham."

    i.  In this letter the Defendant then turned his attention to the concepts of "jihad" and "martyrdom."   He wrote "there is no action better than jihad, and no person better than the mujahid," and that in fighting for ISIS he would either achieve victory or die a martyr.   Towards the end of the letter the defendant told his love interest that she might be thinking that he was a terrorist, and that the Islamic State is a bunch of terrorists, that in reality they were "the best creation of Allah."   In early December 2017, days before he was arrested in this case, the defendant purchased a plane ticket from Houston, Texas to Istanbul, Turkey, as part of his plan to join, support and fight for ISIS.   He was scheduled to travel on January 19, 2018.

    j.  In addition to attempting to travel overseas and join ISIS or conducting an attack in the United States, the Defendant also provided information via a social media platform describing ways to manufacture a bomb to ISIS supporters.   Two other FBI sources ("Source #2" and "Source #3") viewed the Defendant's description of how to make a bomb on two separate days in August 2017.   On August 10, 2017, Source #2 observed a conversation between the Defendant and another user ("User #1") over a social media

messaging platform.   User #1 had posted a screenshot of "mixtures" saying "any one can made 5kg of them or maybe more without afraid that it will explode by it selfie [sic]." User #1 then posted a picture of two plastic soda bottles duct-taped together with wires coming out of them, and batteries and what appeared to be a timer attached.   The Defendant complimented User #1 for posting this recipe for making explosives, and User #1 responded it was a "[m]ixte [sic] of hydrogene [sic]."   After some questions by the Defendant, User #1 then provided more detail about the formula for the explosives.   The Defendant then posted his own explosives formula, which was and is a viable recipe for the improvised explosive known as triacetone triperoxide ("TATP").

k.      Part of this explosives formula the Defendant posted involved using ice. After another user ("User #2") asked why ice was needed, and the Defendant then explained to the group that ice kept the solution cool, otherwise "it could blow up in your face" and advised the group to "take safety seriously while you make this" to be "useful until you can strike."

l.      A few days earlier, on or about August 8, 2017, Source #3 observed a conversation between ISIS supporters, including the Defendant, over a social media platform.   During the discussion, the Defendant provided the group with a "Quick TATP recipe," similar to the one he later provided on August 10, 2017, as discussed above.   After another user ("User #3") claimed to be "[n]ot good with chemistry," the Defendant stated he had just given the group the "easiest recipe."   He then further stated that people should

11

add shrapnel to the "pressure cooker" bomb. After giving this advice, the Defendant stated that he needed to learn how to make a detonator before claiming that they "[could] find dozens of videos on how to make detonator[s] on youtube."

m.     During the same exchange observed by Source #3 on or about August 8, 2017, the Defendant told the group that he could buy a "GIANT machete for $15" and stated "a lot of us are poor, or are seeing watched, or we don't have experience. So not all of us can get a gun or make explosives, but we can afford to buy a $15 knife." He also claimed online that he slept with a machete under his pillow ready to use if his house were raided by law enforcement. When agents arrested the Defendant at his home in this case they executed a search warrant at the residence and found a machete by the Defendant's bed.

n.     The Defendant stated his machete could cut through the arm of the "kuffar," and if sharpened, such a weapon could cut through body armor. "Kuffar" is an Arabic word used to describe a person who rejects or does not believe in the tenets of Islam. The Defendant then discussed the virtues of a Samurai sword and told the group that there were Youtube videos that provided training on how to use such a sword. He further stated how someone, from "5 or 7 feet away," could use the Samurai sword to cut a human in half. The Defendant stated a Samurai sword was a "very cheap easy and affordable option" in the event someone "can't get a gun or make explosives." Others users in the group then continued the discussion of using a bladed weapon to conduct an attack, with some of them

12

making suggestions such as finding a "big bridge" to conduct a bladed weapon attack.

        o.      On December 17, 2004, the United States Department of State designated al Qaeda in Iraq ("AQI") as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act.  On or about May 14, 2014, the United States Department of State amended the designation of AQI as an FTO to add the ISIS alias as AQI's primary alias.  To date, and through the time period relevant to the charges contained in the Indictment, ISIS has remained a designated FTO.

### Breach of Plea Agreement

14.  If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15.  This plea agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of

property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

19.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate any victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions detailed above, Defendant waives the right to challenge, in

any manner including by direct appeal or in a collateral proceeding, any restitution order imposed by the Court.

### Forfeiture

20.   Defendant stipulates and agrees that any property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices), if any, is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

21.   Defendant agrees to forfeit any of his/her property, or his/her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

22.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23.   Defendant consents to any order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24.   Subject to the provisions detailed above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.   Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay

payment. Subject to the provisions detailed above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

26. This written plea agreement, consisting of nineteen (19) pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

27. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___July 8___, 2019.

X _Kaan S. Damlarkaya_
KAAN SERCAN DAMLARKAYA
Defendant

Subscribed and sworn to before me on ___July 8___, 2019.

DAVID J. BRADLEY
UNITED STATES DISTRICT CLERK

By: _Rhonda A. Hawkins_
Deputy United States District Clerk

APPROVED:

RYAN K. PATRICK
United States Attorney

By: _Arthur Jones_ *
ARTHUR R. JONES

↙ by permission

_Gary Tabakman_

16

Assistant United States Attorney                    Attorney for Defendant


ALAMDAR S. HAMDANI
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-17-CR-737 |
| | § | |
| KAAN SERCAN DAMLARKAYA | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case.  I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.  Further, I have carefully reviewed every part of this plea agreement with Defendant.  To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

GARY TABAKMAN
Attorney for Defendant

7/2/19
Date

18

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.


X _Kaan S. Damlarkaya_                    _7/2/19_
KAAN SERCAN DAMLARKAYA                     Date
Defendant